IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 1, 2018

**IN RE DIAWN B.**

**Appeal from the Juvenile Court for Rutherford County**
**No. TC-2776      Donna Scott Davenport, Judge**

_____

**No. M2017-01159-COA-R3-JV**

_____

This appeal arises from an action for grandparent visitation. The child's father died when she was seven weeks old, and when the mother denied visitation to the paternal grandmother, the paternal grandmother filed a petition for grandparent visitation. After a trial, the court determined that the mother opposed visitation, the presumption of substantial harm was not overcome, and grandparent visitation was in the child's best interests. The court ordered grandparent visitation the third weekend of each month, Thanksgiving break in odd years, every Christmas break, and every summer break. The court also gave the grandmother four of the parental rights found in Tenn. Code Ann. § 36-6-101(a)(3)(B)—the right to educational records, the right to be free from derogatory remarks, the right to be notified of medical emergencies, and the right to be notified of extracurricular activities and the opportunity to participate in or observe them. The mother filed a motion to alter or amend the judgment, and the grandmother filed a response and a motion to strike the hearsay contained in mother's motion. Grandmother also requested attorney's fees in connection with her motion to strike hearsay. The trial court entered an "amended" order that was substantively the same as its original decision granting grandparent visitation, and it ordered the mother to pay the grandmother's attorney's fees in connection with the grandmother's motion to strike hearsay. On appeal, the mother asks this court to determine (1) whether the trial court erred "by awarding appellee grandmother a visitation schedule which is essentially a 'tweaked' parenting plan, along with the rights of a parent under Tennessee law," and (2) whether the trial court erred by awarding the grandmother her attorney's fees in opposing the mother's motion to amend. We have determined that the extensive visitation schedule impermissibly interferes with the mother's parental rights under the Tennessee Constitution, and therefore, it is not "reasonable" under Tenn. Code Ann. § 36-6-306(c). We have also determined that Tenn. Code Ann. § 36-6-101(a)(3)(B) is inapplicable in actions for grandparent visitation; therefore, the grandmother is not entitled to any of the rights listed in Tenn. Code Ann. § 36-6-306. Further, we have determined that the trial court erred by awarding attorney's fees to the grandmother because we find no contractual or statutory basis for the award. Therefore, the judgment of the trial court is

vacated and this matter is remanded with instructions for the trial court to establish a grandparent visitation schedule that comports with Tenn. Code Ann. § 36-6-306(c) and minimizes interference with the mother's fundamental constitutional rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which CHARLES D. SUSANO JR. and BRANDON O. GIBSON, JJ., joined.

Aaron G. Walsh, Nashville, Tennessee, for the appellant, Dasia B.[1]

Rebecca L. Lashbrook, Murfreesboro, Tennessee, for the appellee, Rhonda C.

**OPINION**

Diawn B. was born in June 2015 to unmarried parents, Dasia B. ("Mother") and Jadarrius C. ("Father"). In August 2015, when Diawn was seven weeks old, Father died in a car accident. Following Father's death, Mother stayed with Father's aunt for a week, at which time Father's mother, Rhonda C. ("Grandmother") had regular contact with Diawn. However, Grandmother's relationship with Mother quickly became adversarial, and Mother prevented Grandmother from having visitation with Diawn from September through December 2015.

On December 21, 2015, Grandmother filed a Petition for Grandparent's Rights/Visitation with the Rutherford County Juvenile Court. In her response to Grandmother's petition, Mother stated that she was not opposed to visitation but asked that Father's family "interact with Minior [sic] Child around [Mother] until [the child] knows who they are and that [Grandmother] has a stable and safe place to interact with [the child]."

After a trial in October 2016, the court entered a "Final Order Regarding Grandparent's Rights and Visitation," finding that Mother opposed visitation, and because Father was deceased and Grandmother was the parent of Father, a rebuttable presumption of substantial harm to the child arose under Tenn. Code Ann. § 36-6-306(b)(4), which Mother did not overcome. The court then considered the best interest factors found in Tenn. Code Ann. § 36-6-307, ruled it was in the child's best interest for Grandmother to have visitation, and created the following visitation schedule:

---

[1] This court has a policy of protecting the identity of children by initializing the last names of the parties.

1. Contact via telephone every Tuesday and Thursday at 6 p.m.
2. The third full weekend of every month.
3. Thanksgiving in odd years over the entire school break in accordance with the school calendar.
4. Every Christmas holiday, from 2:00 p.m. each Christmas day until 6 p.m. the Sunday before school resumes.
5. Every Father's Day from 6 p.m. the day before to 6 p.m. on the holiday.
6. Every year on Father's birthday, from 6 p.m. the day before until 6 p.m. on the day of his birthday.
7. Visitation every summer break, with Grandmother giving Mother sixty (60) days advanced notice of the requested visitation via email.

The court also gave Grandmother the following "parental" rights:

a. The right to receive notice and relevant information as soon as practicable but within twenty-four (24) hours of any hospitalization, major illness or injury, or death of the child. The Mother shall notify the Paternal Grandmother of the event and shall provide all relevant healthcare providers with the contact information for the Mother;

b. The right to receive directly from the child's school any educational records customarily made available to parents. The Mother shall provide to the other parent as soon as available each academic year the name, address, telephone number and other contact information for the school. In the case of a child who is being homeschooled, the Mother shall advise the Paternal Grandmother of this fact along with the contact information of any sponsoring entity or other entity involved in the child's education, including access to any individual student records or grades available online. The school or homeschooling entity shall be responsible, upon request, to provide the Paternal Grandmother records customarily made available to parents….

c. The right to be free of unwarranted derogatory remarks made about the Paternal Grandmother or her family by the Mother to or in the presence of the child, or via social media;

d. The right to be given at least forty-eight (48) hours' notice whenever possible, of all extracurricular school, athletic, church activities and other activities as to which parental participation or observation would be appropriate, and the opportunity to participate in or observe them. The Mother shall advise the Paternal Grandmother of the activity and provide contact information for the person responsible for its scheduling so that the other parent may make arrangements to participate or

- 3 -

observe whenever possible, unless otherwise provided by law or court order[.]

Mother then filed a "Motion to Amend and/or Make Additional Findings; Rule 52.02; and/or Motion to Alter or Amend the Judgment; Rule 59.04; and/or Motion for Relief from Judgment; Rule 60.02," which argued, *inter alia*, that the trial court's factual findings were incorrect, the trial court erred in its best interest analysis, and the visitation schedule should be altered so that Grandmother had supervised visitation.

Grandmother filed a response and a "Motion to Strike Hearsay Contained in Respondent's Motion to Amend and/or Make Additional Findings; Rule 52.02; and/or Motion to Alter or Amend Judgment; Rule 59.04; and/or Motion for Relief from Judgment; Rule 60.02." In her Motion to Strike Hearsay, Grandmother contended that there was no legal or factual basis for the statements made in Mother's motion, and that a number of statements were "hearsay within hearsay." Grandmother asked the court to strike the hearsay in Mother's motion and requested an award of attorney's fees and costs in filing her motion.

The court entered an order on April 26, 2017, finding that Grandmother was entitled to an award of attorney's fees incurred with regard to her Motion to Strike Hearsay. The court also entered an "Amended Final Order Regarding Grandparent's Rights and Visitation," which was substantively the same as the previous "Final Order Regarding Grandparent's Rights and Visitation." This appeal followed.

**ISSUES**

Mother does not dispute the trial court's factual findings; nor does she dispute the court's determination that substantial harm was established if grandparent visitation was not allowed, and that grandparent visitation was in the child's best interests. Rather, Mother asks us to determine (1) whether the trial court erred "by awarding appellee grandmother a visitation schedule which is essentially a 'tweaked' parenting plan, along with the rights of a parent under Tennessee law," and (2) whether the trial court erred by awarding Grandmother her attorney's fees in opposing Mother's motion to amend.

**ANALYSIS**

I. THE GRANDPARENT VISITATION SCHEDULE AND AWARD OF PARENTAL RIGHTS

A trial court's decisions regarding child visitation schedules are generally within the discretion of the trial court, *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001), and discretionary decisions are reviewed pursuant to the "abuse of discretion" standard of review. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). The abuse of discretion standard does not permit reviewing courts to substitute their discretion for that

of the trial court. *Id*. Nevertheless, the abuse of discretion standard of review does not immunize a lower court's decision from any meaningful appellate scrutiny. *Id*.

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

> … [R]eviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions. When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the [trial] court's legal determinations de novo without any presumption of correctness.

*Id*. at 524-25 (internal citations omitted).

Therefore, we review the trial court's grandparent visitation schedule to determine, where applicable, whether there is a factual basis for the decision in the record, whether the court properly identified and applied the applicable legal principles, and whether the decision is within the range of acceptable alternative dispositions. *Id*. at 524.

## A.  The Grandparent Visitation Schedule

The trial court correctly identified Tenn. Code Ann. § 36-6-306 as the statutory authority that governs grandparent visitation rights. Pursuant to this statutory scheme, if the court determines that a grandparent is entitled to visitation, it may create a "reasonable" visitation plan. Tenn. Code Ann. § 36-6-306(c). However, Tenn. Code Ann. § 36-6-306 does not define "reasonable," nor does it guide the court in the form of factors to consider when creating a "reasonable" visitation schedule. Nevertheless, "[g]randparent visitation statutes must be narrowly construed in order to comport with the state and federal constitutions, because they are in derogation of the parents' fundamental constitutional rights." *Spears v. Weatherall*, 385 S.W.3d 547, 550 (Tenn. Ct. App. 2012).

Therefore, to define "reasonable" under the statute, we must determine the level of visitation permissible under the state and federal constitutions.

"[P]arental rights constitute a fundamental liberty interest under Article I, Section 8 of the Tennessee Constitution," *Hawk v. Hawk*, 855 S.W.2d 573, 579 (Tenn. 1993), and under the Fifth and Fourteenth Amendments to the United States Constitution. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Under both the state and federal constitutions, parents have the freedom to make decisions regarding the care and custody of their children without state interference. *Hawk*, 855 S.W.2d at 579; *Troxel*, 530 U.S. at 66. For a state to intervene in the parent-child relationship, the Tennessee Constitution requires a compelling justification. *Hawk*, 855 S.W.2d at 580. Accordingly, Tenn. Code Ann. § 36-6-306(b)(1) provides that a court must first determine that "cessation or severe reduction of the relationship" between a grandparent and child will cause the child "substantial harm" before ordering visitation against a parent's wishes.

Once harm is established and the court determines that visitation is in the child's best interest, as the trial court did here, the court is tasked with creating a visitation plan that advances the state's compelling interest in minimizing harm to the child. *See* Tenn. Code Ann. § 36-6-306(c). However, because parental rights are fundamental rights, the plan must be narrowly tailored to achieve the state's objective. *See City of Memphis v. Hargett*, 414 S.W.3d 88, 102 (Tenn. 2013). Therefore, **a "reasonable" grandparent visitation plan is one that is "carefully crafted both to afford grandparents the visitation necessary to avoid substantial harm to the child and to minimize, to the extent possible, interference with the parent-child relationship."** *Lovlace v. Copely*, 418 S.W.3d 1, 31 (Tenn. 2013) (emphasis added). The level of visitation necessary to minimize harm is dependent on the unique facts of each case. *See In re Dayton R.*, No. W2015-01848-COA-R3-JV, 2016 WL 1403255, at *7 (Tenn. Ct. App. Apr. 7, 2016).

Here, the trial court's factual findings are undisputed. Father died when Diawn was seven weeks old, and Grandmother was Diawn's primary link to Father's family. Under these circumstances, a presumption of harm arose under Tenn. Code Ann. § 36-6-306(b)(4), which Mother admits she did not rebut. This necessitated a grandparent visitation schedule to minimize the potential harm. However, also important, is the fact that at the time of trial, Diawn was sixteen months old, Mother had always acted as Diawn's primary caregiver, never Grandmother, and Grandmother had only visited with Diawn twice, once in March 2016, and again, approximately three months later at Diawn's first birthday party.

The trial court created a visitation schedule that allowed Grandmother overnight visitation with Diawn the third weekend of every month, every Christmas break, every other Thanksgiving break, and every summer break. Additionally, the court required that Mother facilitate two phone calls per week between Grandmother and Diawn, then a sixteen-month-old baby, without any indication that this young child possessed the verbal

or cognitive skills necessary to actively participate in or benefit from regular phone contact. This level of visitation is excessive in a case like this one where the child is very young, Grandmother never acted as a caregiver or parent, and had yet to establish a significant relationship with the child. Therefore, we have determined that the visitation schedule is not "reasonable" under Tenn. Code Ann. § 36-6-306(c) because it lacks the narrow tailoring required by the Tennessee Constitution.

One of the more significant legal principles to recognize before crafting grandparent visitation is that Grandmother does not stand in Father's shoes in her action for grandparent visitation. *See Uselton v. Walton*, No. M2012-02333-COA-R3-CV, 2013 WL 3227608, at *11 (Tenn. Ct. App. June 21, 2013). A fit parent and a grandparent "do not begin on equal footing." *Id.* (citations omitted). One relies on a fundamental constitutional right, and the other does not. *Id.* Consequently, "the trial court may not 'start with the standard for an action between a child's parents as the baseline and tweak it . . . for . . . grandparent visitation.'" *Id.* (citations omitted).

The grandparent visitation plan at issue in this appeal is so extensive that it impermissibly interferes with Mother's fundamental constitutional rights because it is not narrowly tailored to achieve the state's objective. *See City of Memphis*, 414 S.W.3d at 102. Moreover, it is more extensive than is reasonably necessary "to afford grandparents the visitation necessary to avoid substantial harm to the child and to minimize, to the extent possible, interference with the parent-child relationship." *Lovlace*, 418 S.W.3d at 31. Therefore, the trial court exceeded its discretion by crafting a grandparent visitation schedule that is in conflict with Tenn. Code Ann. § 36-6-306 and constitutional restraints. As a consequence, we vacate and remand for the trial court to create a narrowly tailored visitation schedule that affords Grandmother reasonable visitation to avoid substantial harm to Diawn while minimizing interference with Mother's rights. *See Lovlace*, 418 S.W.3d at 31.

For the foregoing reasons, the Grandparent Visitation Schedule set forth in the trial court's final order is hereby vacated in its entirety and this matter is remanded for the trial court to create a narrowly tailored visitation schedule that comports with Tenn. Code Ann. § 36-6-306 and minimizes interference with Mother's fundamental constitutional rights. While it will be the responsibility of the trial court to establish the new visitation schedule based on the foregoing principles, unless otherwise agreed to by Mother and Grandmother, Grandmother's visitation shall be limited to the third full weekend of every month, starting at 9:00 a.m. on Saturday and ending at 4:00 p.m. on Sunday, until a new grandparent visitation schedule is established by the trial court.

B. The Award of Parental Rights to Grandmother

In addition to creating a grandparent visitation schedule, the trial court awarded Grandmother four of the nine rights listed in Tenn. Code Ann. § 36-6-101(a)(3)(B),

which governs child custody and visitation – (1) the right to receive notice and relevant information concerning the child's major medical issues, Tenn. Code Ann. § 36-6-101(a)(3)(B)(iii); (2) "the right to receive directly from the child's school any educational records customarily made available to parents," Tenn. Code Ann. § 36-6-101(a)(3)(B)(iv); (3) the right to be free from derogatory remarks in the presence of the child, Tenn. Code Ann. § 36-6-101(a)(3)(B)(vi); and (4) "the right to be given . . . notice whenever possible, of all extracurricular school, athletic, church activities . . and the opportunity to participate in or observe them," Tenn. Code Ann. § 36-6-101(a)(3)(B)(vii).

Whether Tenn. Code Ann. § 36-6-101(a)(3) applies in a grandparent visitation action is a question of law, which we review de novo with no presumption of correctness given to the trial court. *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012).

As previously explained, statutes applied in grandparent visitation cases must be narrowly construed because court-ordered grandparent visitation interferes with a parent's fundamental right. *Spears*, 385 S.W.3d at 550. Tennessee Code Annotated section 36-6-101(a)(3)(A) provides:

> Except when the court finds it not to be in the best interests of the affected child, each order pertaining to the custody or possession of a child **arising from an action for absolute divorce, divorce from bed and board or annulment** shall grant to each **parent** the rights listed in subdivisions (a)(3)(B)(i)-(v) during periods when the child is not in that parent's possession or shall incorporate such rights by reference to a prior order. Other orders pertaining to custody or possession of a child may contain the rights listed in subdivisions (a)(3)(B)(i)-(vi).

(Emphasis added). Each of the rights listed in subdivisions (a)(3)(B)(i)-(ix) pertain to the right of a "parent;" therefore, this statute applies to visitation and custody determinations between parents, not to grandparent visitation. As stated earlier, in an action for grandparent visitation, a parent and a grandparent do not appear before the court as equals under the Constitution, and as such, a grandparent is not entitled to the same rights as a parent. *Uselton*, 2013 WL 3227608, at *11.

The governing statute in an action for grandparent visitation is Tenn. Code Ann. § 36-6-306. It provides:

> Upon an initial finding of danger of substantial harm to the child, the court shall then determine whether grandparent visitation would be in the best interests of the child based upon the factors in § 36-6-307. Upon such determination, **reasonable visitation may be ordered.**

Tenn. Code Ann. § 36-6-306(c) (emphasis added). This statute does not reference Tenn. Code Ann. § 36-6-101 or any of the rights therein. It merely authorizes a court to create a reasonable visitation schedule after it makes the requisite findings, nothing more. Therefore, we vacate the award to Grandmother of any of the rights listed in Tenn. Code Ann. § 36-6-101(a)(3)(B).

## II. ATTORNEY'S FEES

Mother argues that the trial court erred by awarding attorney's fees to Grandmother in connection with Grandmother's post-trial Motion to Strike Hearsay.

Whether Grandmother is entitled to attorney's fees is a matter of law, which we review de novo, according no presumption of correctness to the trial court's decision. *House v. Estate of Edmondson*, 245 S.W.3d 372, 378 (Tenn. 2008).

This state strictly adheres to the American Rule, which provides that attorneys must look solely to their own client for payment of their fees. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). The American Rule applies unless a contract or statute specifically and expressly creates a right to recover attorney's fees or some "other recognized exception to the American Rule is present." *Id.* at 310.

In her Motion to Strike Hearsay, Grandmother asked for an award of attorney's fees and costs in filing her motion but did not provide a legal justification for her request. Likewise, in its order awarding attorney's fees, the trial court ruled:

> This cause came on to be heard on the 3rd day of April, 2017, upon the Motion to Strike Hearsay filed by the Petitioner, as well as the Respondent's Motion to Amend and/or Make Additional Findings; Rule 52.02; and/or Motion To Alter Or Amend Judgment; Rule 59.04; and/or Motion For Relief From Judgment; Rule 60.02. The court finds that the Petitioner is entitled to an award of attorney's fees incurred with regard to these matters in the amount of $967.50, pursuant to the Affidavit of Attorney's Fees filed by counsel for the Petitioner, [Grandmother]. Therefore, the Petitioner is awarded a judgment against Respondent [Mother], in the amount of $967.50, for which execution may issue if necessary.

Because the trial court failed to state a legal basis for the award of attorney's fees, and we are unaware of any contract, statute, or recognized exception that would provide one, we vacate the award of attorney's fees to Grandmother.

## IN CONCLUSION

The judgment of the trial court is vacated and this matter is remanded with instructions for the trial court to establish a grandparent visitation schedule that comports with Tenn. Code Ann. § 36-6-306(c) and minimizes interference with Mother's fundamental constitutional rights. The costs of appeal are assessed against the appellee, Rhonda C.

_____
FRANK G. CLEMENT JR., P.J., M.S.